[Civ. No. 23136. Third Dist. Sept. 26, 1984.]

JAMES R. MURDEN, Plaintiff and Appellant, v.
COUNTY OF SACRAMENTO et al., Defendants and Respondents.

**COUNSEL**

David P. Mastagni and Richard J. Chiurazzi for Plaintiff and Appellant.

L. B. Elam, County Counsel, and Anthony L. Wright, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**BYRNE, J.**\*—Petitioner James Murden appeals from a denial of his petition for writ of mandate. Petitioner alleges his "liberty interests" as protected by the California and the United States Constitutions had been violated upon his termination of employment for the Sacramento County Sheriff's Department as a deputy sheriff with the reserve forces. His termination was based upon charges of misconduct. He requested an adequate due pro-

---

*Assigned by the Chairperson of the Judicial Council.

cess hearing for the purpose of clearing his name. He also requested back-pay. We affirm.

## FACTS

In December 1981 petitioner began work as a nonpaid voluntary member of the reserve forces of the Sacramento County Sheriff's Department. On April 4, 1982, he was given a nine-month paid assignment as an on-call deputy sheriff at the Sacramento County main jail facility. An on-call deputy sheriff is an employee hired from the reserve forces to temporarily fill vacancies when regular officers are absent or there is otherwise some temporary vacancy in a permanent position. The assignment was terminable at will. Petitioner did not have any permanent or probationary status.

On May 11, 1982, Lieutenant Dick Bennett, executive officer of the main jail, informed petitioner of certain charges of misconduct and poor job performance that had been made against him. Officers who had contact with petitioner felt uncomfortable with him and believed he was not capable of grasping the basic duties and job functions at the jail facility after a sufficient training period. It was generally reported that petitioner appeared to be afraid of the inmates. In addition, two female clerks reported that petitioner initiated a conversation with them on the subject of masturbating in front of his girlfriend which they found offensive and embarrassing.

Lieutenant Bennett asked petitioner for an explanation of his conduct. He admitted using the term "masturbation" in a conversation with one woman but stated he did not use it in an offensive or embarrassing manner or in reference to his own activities. Petitioner stated the women were forced to write accusatory letters against him. He believed other officers were against him and were not giving him a chance. Lieutenant Bennett informed petitioner his performance was not acceptable and he was not suited to law enforcement work. He immediately suspended petitioner from his main jail assignment.

The following day, Lieutenant Bennett informed his superior, Chief Gilbert Baker, of petitioner's suspension and recommended that petitioner be permanently removed from the reserve forces and not be hired as a regular deputy. Chief Baker concurred with the recommendation. On May 18, petitioner was suspended from the reserve forces. His badge and identification were taken from him pending review of his case by Lieutenant Lonnie Beard, commander of the sheriff's training and reserve forces bureau, and Corporal Robert Skay, reserve forces coordinator.

The morning after petitioner's suspension, he contacted Lieutenant Beard and requested a meeting. At the meeting, petitioner discussed the allegations

and explained his view of the circumstances surrounding them. Lieutenant Beard was not familiar with the facts at that time, but he assured petitioner he would discuss the matter with him again after he received information from the jail supervisor and he would order an investigation.

Corporal Skay investigated the allegations to determine whether petitioner was properly suspended and whether he should be permanently terminated as a reserve deputy sheriff. If Corporal Skay had cleared petitioner of the allegations and he had been retained as a member of the reserve forces, Lieutenant Beard did not have the authority to reinstate him to his main jail assignment if Chief Baker did not want him back. However, Lieutenant Beard had the authority to reassign petitioner to another paid on-call assignment within the sheriff's department.

Corporal Skay reviewed letters from Lieutenant Bennett and Sergeant Martin, another employee of the main jail, as well as letters from the two female employees. In June Corporal Skay met with petitioner, at which time he permitted petitioner to read the letters for the first time. He was not given copies but he was permitted to write them out. These letters were placed in petitioner's personnel file.

Corporal Skay did not ask for an oral response, but instead asked petitioner to prepare and submit a written response to the allegations. Petitioner did so. Corporal Skay attempted to make appointments with the two female employees to discuss their statements, but he was able to talk with only one.

Following his investigation, and after considering petitioner's statement, Corporal Skay determined the allegations against petitioner were true and concluded they constituted just cause for his suspension and subsequent termination from the reserve forces. Petitioner was permanently terminated as an on-call deputy sheriff and a reserve deputy sheriff effective June 29, 1982. Corporal Skay informed petitioner he could appeal the decision to Lieutenant Beard.

Petitioner appealed the decision and met with Lieutenant Beard. Lieutenant Beard reviewed the investigation and discussed the matter with Corporal Skay. He affirmed the discharge of petitioner.

Petitioner requested a hearing before the county civil service commission. The commission denied petitioner's request on the ground it did not have jurisdiction to hear appeals from terminated temporary employees.

Petitioner filed a petition for writ of mandate to compel respondents to reinstate him to his former position, pay back wages lost during the period

of unlawful termination, and pay punitive damages, costs, and attorney's fees.[1] Petitioner's action was based upon the ground that he was denied due process in being terminated on charges that impugn his character without an adequate pretermination hearing.[2]

The trial court concluded the allegations against petitioner infringed upon his liberty interests and thus he was entitled to notice and a hearing to afford him an opportunity to clear his name. However, the court determined petitioner was afforded an adequate hearing under the circumstances and denied the petition.

## DISCUSSION

Petitioner contends he was entitled to a pretermination hearing on the allegations of inappropriate sexual conversations, and that such hearing must include reasonable notice of the proposed action and a written statement of reasons; an opportunity to be represented by an attorney; a hearing before an impartial reviewer; and an opportunity to confront and cross-examine the witnesses against him.

■ "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount." (*Board of Regents* v. *Roth* (1972) 408 U.S. 564, 569-570 [33 L.Ed.2d 548, 556, 92 S.Ct. 2701].) Thus, application of this principle requires a two-step analysis; "We must first ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'; if protected interests are implicated, we must then decide what procedures constitute 'due process of law.'" (*Ingraham* v. *Wright* (1977) 430 U.S. 651, 672 [51 L.Ed.2d 711, 731, 97 S.Ct. 1401].)

### A. *Petitioner's Interest*

Petitioner concedes he had no property interest in either his on-call jail assignment or his position in the reserve forces. ■ To have a property interest in continued government employment, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of

---

[1] At trial, petitioner abandoned his request for reinstatement and punitive damages, seeking only backpay and attorney's fees.

[2] Although in his moving papers petitioner did not expressly request that respondents be ordered to provide a hearing, this issue was raised in the posttrial briefs and was decided by the trial court.

entitlement to it." (*Board of Regents* v. *Roth, supra,* 408 U.S. at p. 577 [33 L.Ed.2d at p. 561].) ██ Petitioner's on-call assignment was temporary and terminable at will. His position in the reserve was strictly voluntary. Thus, he had no legitimate claim of entitlement to continued employment.

We agree with the trial court, however, that the charges of inappropriate and embarrassing sexual conversations accompanying petitioner's suspension and dismissal implicated protected liberty interests. Although a probationary employee may generally be dismissed without a hearing and without good cause, an employee's liberty is impaired if the government, in connection with an employee's dismissal or failure to be rehired, makes a "charge against him that might seriously damage his standing and associations in the community," such as a charge of dishonesty or immorality, or would "impose[] on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." (*Board of Regents* v. *Roth, supra,* 408 U.S. at p. 573 [33 L.Ed.2d at pp. 558-559]; see also *Wilkerson* v. *City of Placentia* (1981) 118 Cal.App.3d 435, 441-442 [173 Cal.Rptr. 294]; *Lubey* v. *City and County of San Francisco* (1979) 98 Cal.App.3d 340 [159 Cal.Rptr. 440].) A person's protected interests are not infringed merely by defamatory statements, for an interest in reputation alone is not a constitutionally protected liberty interest. (*Paul* v. *Davis* (1976) 424 U.S. 693, 711-712 [47 L.Ed.2d 405, 420, 96 S.Ct. 1155].) Rather, the liberty interest is infringed only when the defamation is made in connection with the loss of a government benefit, such as, in this case, employment. (*Id.,* at pp. 708-710 [47 L.Ed.2d at pp. 417-419]; *Margoles* v. *Tormey* (7th Cir. 1981) 643 F.2d 1292, 1298-1299.)

When the government infringes on a person's liberty interest in this manner, "the remedy mandated by the Due Process Clause of the Fourteenth Amendment is 'an opportunity to refute the charge.' . . . 'The purpose of such notice and hearing is to provide the person an opportunity to clear his name,' . . ." (*Codd* v. *Velger* (1977) 429 U.S. 624, 627 [51 L.Ed.2d 92, 96, 97 S.Ct. 882]; citation omitted.)

Petitioner was charged with engaging two female employees in embarrassing and inappropriate conversation with regard to his sexual activities, particularly masturbation. He was charged with being unable to learn the basic duties of his job and being inordinantly afraid of inmates. All three charges allegedly "created a great deal of resentment" toward petitioner from his coworkers and supervisors. The latter charges, concerning petitioner's competency and ability to get along with coworkers, do not infringe upon his liberty interest. (*Stretten* v. *Wadsworth Veterans Hospital* (9th Cir. 1976) 537 F.2d 361, 366.) The first charge, however, impugns petitioner's

character and morality, and thus, if circulated, would damage his reputation and seriously impair his ability to find employment in his chosen profession.

We must realistically assume that potential employers in the public law enforcement field would investigate petitioner's background and discover the reasons for his suspension and termination. (See *Lubey* v. *City and County of San Francisco, supra,* 98 Cal.App.3d at p. 347.) Corporal Skay testified it was very doubtful another law enforcement agency would hire petitioner with the two letters from the female employees in his personnel file. Although petitioner might conceivably refuse to permit the release of his file to potential employers, it is "naive and unrealistic" to believe that a law enforcement agency would consider hiring petitioner without a full disclosure of his employment record. "His refusal to consent to the full release of information would only raise the specter of much more serious misconduct than that contained in the personnel file. He would have no real choice except to consent to the release of his personnel file . . . ." (*Giordano* v. *Roudebush* (S.D.Iowa 1977) 448 F.Supp. 899, 906.)

Accordingly, we conclude petitioner's liberty interest was implicated by the charges of inappropriate and embarrassing sexual conversations made in connection with his loss of employment. He was entitled to an opportunity to refute the charges and clear his name.

### B. *What Process Is Due*

We must next decide whether the procedures followed by respondents in this case constituted "due process of law," for " "[o]nce it is determined that due process applies, the question remains what process is due.' " (*Goss* v. *Lopez* (1975) 419 U.S. 565, 577 [42 L.Ed.2d 725, 737, 95 S.Ct. 729].)

■ Petitioner first contends he was entitled to a "pretermination" hearing, before he was suspended from his on-call assignment at the county jail. We disagree. " "[D]ue process requires that when a State seeks to terminate [a protected] interest . . ., it must afford "notice and opportunity for hearing appropriate to the nature of the case" *before* the *termination becomes effective.*' " (*Board of Regents* v. *Roth, supra,* 408 U.S. at p. 570, fn. 7 [33 L.Ed.2d at p. 556]; second italics added.) Petitioner was merely *suspended* from his on-call assignment. His badge and identification were taken from him *pending* an investigation by Corporal Skay. He was still a member of the sheriff's reserve forces. Not until after he was given an opportunity to respond to the charges was he finally terminated from the employ of the sheriff's department. Although he may not have been reassigned to the jail facility if he had cleared his name, he had no entitlement to any particular assignment. However, if he had cleared his name he would have remained

a member of the reserve forces and available for other on-call assignments. His effective termination came when he was permanently dismissed from the reserve forces. He therefore was given a hearing before his termination became effective.

In this case petitioner had no constitutionally protected interest in his on-call assignment at the jail. It was a temporary position, terminable at will. The hearing to which he was entitled was not intended to protect that interest. Instead, "the hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is *solely* 'to provide the person an opportunity to clear his name.'" (*Codd* v. *Velger, supra,* 429 U.S. at p. 627 [51 L.Ed.2d at p. 96]; italics added.)

Underlying the claim to a predeprivation hearing as a matter of right is "the proposition that full relief cannot be obtained at a post deprivation hearing." (*Mathews* v. *Eldridge* (1976) 424 U.S. 319, 331 [47 L.Ed.2d 18, 31, 96 S.Ct. 893].) A hearing prior to petitioner's release from his jail assignment would have provided no more relief than a postrelease hearing. Even if he had cleared his name of the charges of improper behavior at a prerelease hearing, his supervisors would have remained free to release him for the other reasons set forth or for no articulated reason whatsoever. (See *Board of Regents* v. *Roth, supra,* 408 U.S. at p. 573, fn. 12; [33 L.Ed.2d at p. 558].) Had the reasons for petitioner's release not impugned his good name, he would not have been entitled to any hearing. (*Garcia* v. *Daniel* (7th Cir. 1973) 490 F.2d 290, 292.)

Although not adopted by the majority, we are persuaded by the reasoning of the plurality opinion of the Supreme Court in *Arnett* v. *Kennedy* (1974) 416 U.S. 134, 157 [40 L.Ed.2d 15, 35, 94 S.Ct. 1633], wherein Justice Rehnquist (joined by Burger, C. J., and Stewart, J.) concluded the liberty interest involved where a probationary employee is dismissed on charges that impugn his good name "is not offended by dismissal from employment itself, but instead by dismissal based upon an unsupported charge which could wrongfully injure the reputation of an employee. Since the purpose of the hearing in such a case is to provide the person 'an opportunity to clear his name,' a hearing afforded by administrative appeal procedures *after* the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause." (Italics added.)[3]

Accordingly, petitioner was not entitled to a hearing to clear his name prior to his suspension from the county jail assignment.

---

[3]The concurring opinions do not actually disagree with this portion of the plurality opinion, but rather concur in the result on other grounds. (See *Arnett* v. *Kennedy, supra,* 416 U.S. at pp. 164-203 [40 L.Ed.2d at pp. 39-61] (conc. opn. of Powell, J., joined by Blackmun, J., and conc. and dis. opn. of White, J.).)

It remains to be determined whether the hearing petitioner received complied with the requirements of due process. Petitioner contends he was entitled to such trial-type elements as written notice of charges, counsel, presentation of witnesses under oath, confrontation and cross-examination, an impartial reviewer, and a hearing transcript.

At a minimum, due process "require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing 'appropriate to the nature of the case.' '[T]he fundamental requisite of due process of law is the opportunity to be heard,' . . ." (*Goss* v. *Lopez, supra,* 419 U.S. at p. 579 [42 L.Ed.2d at p. 737]; citation omitted.) Moreover, "[t]he key component of due process, when a decisionmaker is acquainted with the facts, is the assurance of central fairness at the hearing. Essential fairness is a flexible notion, but at a minimum one must be given notice and opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (*Vanelli* v. *Reynolds School Dist. No. 7* (9th Cir. 1982) 667 F.2d 773, 779-780; citations omitted.) "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews* v. *Eldridge, supra,* 424 U.S. at p. 335 [47 L.Ed.2d at p. 33].)

Petitioner is not necessarily entitled to a full trial-type evidentiary hearing with its attendant procedural rules. "[D]ifferences in the origin and function of administrative agencies 'preclude wholesale transplantation of the rules of procedure, trial, and review which have evolved from the history and experience of courts.' . . . The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances." (*Id.,* at p. 348 [47 L.Ed.2d at p. 41], citation omitted.)

Although petitioner's interest in being free from charges that impugn his character and impair his freedom to obtain employment is of great weight, so, too, is the government's interest in terminating law enforcement officers who are of questionable moral character, and in doing so in an expeditious, efficient, and financially unburdensome manner. (See *Mathews* v. *Eldridge, supra,* 424 U.S. at pp. 347-348 [47 L.Ed.2d at pp. 40-41].)

In considering the nature of this case, it must be emphasized that the purpose of a hearing here is not to protect a property interest in peti-

tioner's position with the reserve forces. The sheriff's department acted within its "broad discretion . . . to determine which . . . employees" it will retain, a discretion that may be exercised without judicially cognizable good cause, unless employment has been unjustifiably conditioned on the waiver of constitutional rights. (*Bogacki* v. *Board of Supervisors* (1971) 5 Cal.3d 771, 783 [97 Cal.Rptr. 657, 489 P.2d 537].) The department was justified in terminating petitioner on the independent allegations of incompetency, allegations which do not implicate his liberty interest. Thus petitioner's continued employment with the department did not hinge on particular findings of fact with regard to the charges of inappropriate sexual conversations. The purpose of the hearing was *solely* to provide petitioner an opportunity to refute the charges and clear his name. (*Codd* v. *Velger, supra,* 429 U.S. at p. 627 [51 L.Ed.2d at p. 96].)

 Prior to his termination, petitioner was appraised of the charges against him and given an opportunity to read the letters of the female employees. He had the opportunity to refute the charges and explain his behavior before two different officers of the department, and appealed his case to a third. He submitted a detailed written response to the letters in which he explained his version of events. He was not precluded from conducting his own investigation or presenting his own evidence. He did not deny using the term "masturbate" in conversation with one of the employees, but rather suggested she should not have been offended by it. Corporal Skay orally discussed the incidents with the two employees. Lieutenant Beard considered the matter on appeal and concurred in Corporal Skay's recommendation. The risk of error in these proceedings was not so great as to require more formal proceedings. There is no indication petitioner could have more effectively refuted the charges had he been afforded a trial-type hearing. Such a hearing would place financial and procedural burdens on the county inappropriate to the nature of this case.

We conclude petitioner was afforded a meaningful and adequate opportunity to refute the charges and clear his name.

Petitioner makes the further contention Lieutenant Beard was not an impartial decisionmaker as an appeal officer because he made the initial decision to terminate petitioner prior to the date of his termination, June 29, 1982. This fact is unsupported by the record, which indicates Lieutenant Beard did not make a decision until after Corporal Skay's decision on that date. Petitioner cites no other evidence indicating Lieutenant Beard was not capable of impartially considering the matter. There is nothing to indicate he had a personal or financial stake in the action, or harbored any animosity toward petitioner. State administrators "'are assumed to be men of conscience and intellectual discipline, capable of judging a particular contro-

versy fairly on the basis of its own circumstances.'" (*Withrow* v. *Larkin* (1975) 421 U.S. 35, 55 [43 L.Ed.2d 712, 728, 95 S.Ct. 1456].)

California cases cited to by petitioner are distinguishable. In *Lubey* v. *City and County of San Francisco, supra,* 98 Cal.App.3d 340, probationary police officers were terminated on the basis of citizen charges of misconduct. The officers were not appraised of all the charges against them. They were discharged at a meeting with the police chief on a few hours' notice. At the meeting, the chief told the officers he intended to dismiss them and only then gave them an opportunity to refute the charges. At the close of the meeting, the officers were handed previously signed notices of termination, effective immediately. In our case, petitioner was not terminated as a reserve officer without being given notice of the charges, an opportunity to review the evidence and submit a detailed response, and an opportunity to appeal. He was not denied an opportunity to conduct his own investigation or present his own evidence. Moreover, the court in *Lubey* concluded the city and county violated their own charter provisions in terminating the officers.

In both *Doyle* v. *City of Chino* (1981) 117 Cal.App.3d 673 [172 Cal.Rptr. 844], and *Wilkerson* v. *City of Placentia, supra,* 118 Cal.App.3d 435, employees were discharged without any prior hearing whatsoever.

Accordingly, we conclude that under the circumstances of this case petitioner was afforded a meaningful and adequate opportunity to refute the charges and clear his name and thus was not denied due process of law. Our conclusion makes it unnecessary to reach the issue of the proper remedy.

The judgment is affirmed.

Regan, Acting P. J., and Carr, J., concurred.

A petition for a rehearing was denied October 25, 1985, and appellant's petition for a hearing by the Supreme Court was denied January 3, 1985. Broussard, J., was of the opinion that the petition should be granted.