**Donald TUCKER, Plaintiff,**

v.

**Janet RENO, Attorney General of the United States, Defendant.**

**No. 01–85–KI.**

United States District Court,
D. Oregon.

April 8, 2002.

Bradley P. Avakian, Portland, for Plaintiff.

Michael W. Mosman, United States Attorney, District of Oregon, Ronald K. Silver, Assistant United States Attorney, Portland, for Defendant.

## OPINION AND ORDER

KING, District Judge.

Plaintiff Donald Tucker, a counselor for the Federal Bureau of Prisons ("BOP"), is also an ordained minister in the Church of the Nazarene. Tucker has been applying for a chaplaincy position with the BOP since 1996. The BOP refuses to hire him as a chaplain because it believes that he is not qualified for the position. This case concerns Tucker's unsuccessful application for a chaplaincy position in August 1999 He alleges claims under Title VII for disparate treatment and disparate impact religious discrimination and retaliation. Before the court is defendant's motion for summary judgment (# 16). For the reasons below, I grant the motion.

## FACTS

Susan Van Baalen, a vowed member of the Roman Catholic Adrian Dominican Sisters, received a Master of Divinity degree in 1980. She has been a BOP chaplain since 1988. Van Baalen was assistant chaplaincy administrator for the BOP from February 1995 until September 1996. One of her responsibilities was to review applicant files and make recommendations. In October 1996, Van Baalen was promoted to the chaplaincy administrator for the BOP and still serves in that position.

Chaplains are professional excepted service employees of the BOP. The Office of Personnel Management ("OPM") does not have qualification standards for chaplaincy positions, leaving the standards to be established by each agency. OPM does have classification standards which are used to set appropriate pay grade levels for chaplains.

The BOP qualification standards state qualifications for age, religious credentials, physical standards, academic preparation, experience, and ecclesiastical endorsement. The religious credentials require that applicants be ordained clergy or members of ecclesiastically recognized religious institutes of vowed men or women. Van Baalen explains that this broadens the pool of qualified applicants by recognizing religious credentials of applicants whose endorsing faith groups, such as Roman Catholic and Native American, have

appropriate religious structures in addition to ordained clergy.

The Church of the Nazarene granted Tucker an ecclesiastical endorsement for correctional chaplaincy. The BOP recognizes his endorsement and ordination as adequate for a chaplaincy position.

Van Baalen considers the Master of Divinity degree to be the community standard in the United States for professional chaplains, as documented by the standards of the Association of Theological Schools in Pittsburgh, Pennsylvania, the recognized accrediting body for seminaries in North America. She and the BOP regional chaplaincy administrators consider it the best predictor of success as a professional chaplain. Consequently, the BOP has always required the Master of Divinity degree or its academic equivalent.

Van Baalen does not believe that previous chaplaincy administrators applied the equivalency requirement consistently, resulting in the hiring of some chaplains who were not professionally prepared to succeed in the position. Charles Riggs, her predecessor, explained some specific hires of people who did not meet the equivalency requirement. These hires, of Islamic, Roman Catholic, and female chaplains, were due to extreme shortages of qualified people in the applicant pool and occurred prior to Tucker's 1999 application.

Beginning in September 1995, the BOP more strictly applied the equivalency requirement for applicants from the Judeo–Christian tradition and began moving toward a more consistent equivalency standard for faith groups outside the Judeo–Christian tradition. After reviewing various standards, the BOP began reviewing applicants' seminary transcripts for 90 semester hours of graduate work (or 120 quarter hours), spread in a specified fashion among four general areas plus ten hours earned in any graduate discipline. These academic requirements became a matter of record in the Regional Chaplaincy Administrator offices and the Chaplaincy Administrator's office and were made available to interested applicants, including Tucker, prior to his August 1999 application. The director of the BOP and the employee's union formally agreed to the standard in September 2001. The standard is now part of the BOP printed policies, BOP Policy Statement 3939.07. Although the standard was not formally adopted prior to September 2001, Van Baalen states that it has been consistently applied since before 1999. The result is that the BOP has found applicants of many faiths, Protestant, Roman Catholic, Islam, and Buddhist, unqualified even though the applicants had master degrees in various religious disciplines.

Bruce Fenner, the chaplaincy administrator for the BOP western regional office, agrees that Van Baalen more strictly applies the qualification requirement than previous chaplaincy administrators and requires regional chaplaincy administrators to carefully review the seminary transcripts of applicants not holding Master of Divinity degrees.

Tucker earned a Master in Christian Counseling and is working toward a doctorate. His academic course work lacks 10 quarter hours of theology, ethics, or philosophy, 14 quarter hours of religious history and world religions, and 14 quarter hours of study of religious writings. Consequently, Tucker does not meet the BOP standard for equivalency to a Master of Divinity. Van Baalen has encouraged Tucker to complete the Master of Divinity program offered at his and other seminaries. Van Baalen also contacted Tucker's seminary, the Western Theological Seminary, to determine if they used a different name for what was commonly recognized as the Master of Divinity degree. Western Theological told Van Baalen that Tuck-

er's degree was on a different track from the Master of Divinity program. The school's catalog states that the Master of Divinity degree prepares people for pastoral ministry but the Master in Christian Counseling does not.

The BOP inmate population's religious beliefs are highly diverse. Roman Catholic inmates represent the highest percentage of BOP inmates. Since tightening the standards in 1995, Van Baalen has rejected a number of Roman Catholic applicants for lack of a Master of Divinity or equivalent course work, even in light of a shortage of qualified Roman Catholic chaplains. There is also a shortage of qualified Muslim chaplains. Van Baalen has worked with the School of Islamic and Social Sciences in Leesburg, Virginia, to get its involvement in creating a Master of Divinity program under an appropriate Islamic program title. Over 65% of the BOP chaplains are Protestant, including six Nazarene chaplains who all have Master of Divinity degrees. Only 35% of the inmates indicate a religious preference of Protestant.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed,* 173 F.3d 736, 739 (9th Cir.), *cert. denied,* 528 U.S. 952, 120 S.Ct. 375, 145 L.Ed.2d 293 (1999).

## DISCUSSION

### I. *Disparate Treatment Discrimination*

Tucker alleges that the BOP will not hire him as a chaplain because of his religion. Defendant contends that Tucker's claim fails because Tucker is not qualified for the position and, thus, cannot prove his prima facie case of discrimination.

■ To prove a Title VII disparate treatment claim, a plaintiff must establish a prima facie case of discrimination. A prima facie case may be demonstrated by direct evidence of discriminatory intent or may be based on a presumption arising from factors set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994). Generally stated, the factors are: (1) membership in a protected class; (2) qualification for the job or satisfactory performance of the job; (3) an adverse employment decision; and (4) different treatment than those similarly situated outside of the protected class. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

■ The requisite degree of proof necessary to establish a prima facie case for a Title VII claim on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis,* 26 F.3d at 889. "The plaintiff need only offer evidence which 'gives rise to an inference of unlawful discrimination.' ... Establishment of a prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.* (citations omitted).

■ Tucker contends that he is qualified to be a chaplain but his arguments are based on unreasonable interpretations of the evidence. He contends that the BOP had no written, approved policy until the

fall of 2001. This was the time when the BOP finished negotiations with the affected union, received its approval, and formalized the policy as BOP Program Statement 3939.07. Although the requirement evolved over time, there is no evidence to dispute Van Baalen's statement that written copies of the Master of Divinity equivalency requirement were given to applicants prior to Tucker's 1999 application and consistently applied. The fact that the formal Program Statement was not approved until later does not lead to a conclusion that the equivalency requirement was not consistently applied among people of various faiths by 1999. Tucker also argues that the guidelines only recognize ecclesiastical endorsement under a Roman Catholic definition. This argument fails for two reasons. First, defendant does not dispute that Tucker's ordination and ecclesiastical endorsement are satisfactory to be a chaplain. Second, the reference broadens the applicant pool to include people whose faith tradition does not ordain them but whose tradition has other religious structures for people who would be considered appropriate by their faith to be a chaplain. Examples included vowed Roman Catholic sisters and brothers and Native American spiritual leaders and medicine men.

Finally, Tucker contends that he is qualified under the OPM standards. This argument fails because the OPM standards apply to pay grade classifications, not to qualifications for the positions. Because chaplains are in excepted service, the law concerning federal employees allows the agency, the BOP in this instance, to set the qualification standards. 5 C.F.R. § 302.202.

I conclude that Tucker has not provided the minimum proof necessary to establish his prima facie case. I grant summary judgment against the disparate treatment claim.

## II. *Disparate Impact Discrimination*

Tucker alleges that the BOP's facially neutral policy has a disparate impact on him because of his religion.

A disparate impact claim involves a facially neutral employment practice that disproportionately disadvantages one group as against another. *Llamas v. Butte Community College District*, 238 F.3d 1123, 1127 (9th Cir.2001). To establish a prima facie case of disparate impact discrimination, plaintiff must (1) identify the specific employment practice or selection criteria being challenged; (2) show a disparate impact; and (3) prove causation. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1424 (9th Cir.1990). Statistical evidence must be sufficient to show that the questioned practice caused the exclusion of applicants because of membership in a protected class. The statistical disparities must be sufficiently substantial to raise an inference of causation. *Id.* Once plaintiff establishes a prima facie case, the burden shifts to defendant who may either: (1) discredit plaintiff's statistics; (2) offer other statistics which show no disparity; or (3) produce evidence that its disparate employment practices are based on legitimate business reasons. Then, plaintiff must show that other practices, without a similarly undesirable discriminatory effect, would serve the employer's legitimate interest in efficient and trustworthy workmanship. *Id.* When evaluating disparate impact claims, the court may point out fallacies or deficiencies in the data, such as applicant pools containing individuals lacking minimal qualifications for the job, small data sets, inadequate statistical techniques, failure to consider if rejected applicants in the protected class were qualified for the job, or using small random samples when all disputed employment decisions could have been evaluated. *Cerrato v. San*

*Francisco Community College Dist.*, 26 F.3d 968, 976–77 (9th Cir.1994).

Tucker has provided no statistical evidence to establish his prima facie case for a disparate treatment claim. Defendant provides evidence that 65% of the BOP chaplains are Protestant and six are members of the Church of the Nazarene who all have Master of Divinity degrees. I grant summary judgment against his disparate impact claim.

## III. *Retaliation*

Tucker alleges that the BOP did not hire him as a chaplain in August 1999 in retaliation for his earlier EEOC complaint making the same religious discrimination allegations concerning an application in 1996.

To establish a Title VII retaliation claim, a plaintiff can establish a prima facie case by establishing the following factors: (1) involvement in a protected activity; (2) an adverse employment action; and (3) a causal link between the activity and the employment action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). If the plaintiff establishes the prima facie case, the burden shifts as in a disparate treatment case. *Id.* The causal link can be inferred from circumstantial evidence, such as the proximity in time between the protected activity and the retaliatory employment decision. *Id.* at 1244. *See Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir.1987) (holding that a two-to-three-month delay was not too long to establish a causal link sufficient to withstand summary judgment and citing with approval *Hochstadt v. Worcester Found. for Experimental Biology, Inc.*, 425 F.Supp. 318, 324–25 (D.Mass.), *aff'd*, 545 F.2d 222 (1st Cir.1976), which held that a six-month delay could satisfy the causation requirement). *But see Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1065 (9th Cir. 2002) (nearly 18-month lapse between protected activity and adverse employment action is too long, by itself, to give rise to an inference of causation and citing cases from other circuits with similar holdings for periods ranging from four to eight months).

Tucker has failed to establish a prima facie case of retaliation. Approximately three years passed between his first EEOC claim and the application at issue here. As explained above, Tucker has not established that he is qualified for the position. This weighs heavily against the causation element of his case. I grant summary judgment against Tucker's retaliation claim.

There is no need to address defendant's other arguments based on res judicata and exhaustion of remedies.

## CONCLUSION

Defendant's motion for summary judgment (# 16) is granted. This action is dismissed with prejudice.

IT IS SO ORDERED.