Filed 7/11/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| JERALD WYATT,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>KERN HIGH SCHOOL,<br><br>    Defendant and Appellant. | F081049<br><br>(Kern Super. Ct.<br>No. BCV-19-101320)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  J. Eric Bradshaw, Judge.

Lozano Smith, Sloan R. Simmons, Jenell Van Bindsbergen, and Junaid Halani for Defendant and Appellant.

Swanson O'Dell and Seth O'Dell; Carpenter Zuckerman & Rowley and Robert J. Ounjian; Rodriguez & Associates, Daniel Rodriguez, and Chantal Trujillo for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

At issue in this matter is whether certain records maintained by appellant Kern High School District (KHSD) and pertaining to respondent Jerald Wyatt, a police officer formerly employed by KHSD, are subject to disclosure in response to requests made in 2019, pursuant to the California Public Records Act (Gov. Code, § 6250 et seq.) (CPRA).

KHSD maintains a police department. In early 2019, KHSD received several CPRA record requests from various news agencies and others seeking information concerning KHSD officer involved events including records pertaining to (1) the discharge of a firearm at a person by an officer; (2) the use of force by an officer resulting in death or great bodily injury; (3) sustained findings an officer engaged in sexual assault involving a member of the public; and (4) sustained findings of dishonesty-related misconduct by an officer. Upon receipt of the CPRA requests, KHSD notified Wyatt that it had identified "documents from [Wyatt's] personnel file responsive to these requests" (subject records).[1]

Prior to January 1, 2019, access to such records was only permitted through a *Pitchess*[2] motion brought pursuant to Evidence Code sections 1043 and 1045. With the passage of Senate Bill No. 1421 (2017–2018 Reg. Sess.) in 2018 ("2018 amendments"), Penal Code sections 832.7 and 832.8 were amended to allow disclosure of such records pursuant to a CPRA request under specified circumstances. (Former Pen. Code, § 832.7, subd. (b)(1), Stats. 2018, c. 988, § 2) (Senate Bill 1421).[3]

---

[1] Public records filed by Wyatt reveal the subject records relate to purported "sustained" findings involving alleged dishonesty—one of the enumerated categories in the CPRA requests. KHSD does not contend the subject records are responsive to any other enumerated category contained in the CPRA requests.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[3] Penal Code section 832.7 was amended again in 2021 ("2021 amendments"). (Assem. Bill No. 474 (2021–2022 Reg. Sess.) § 339; Sen. Bill No. 16 (2021–2022 Reg. Sess.) § 3; Sen. Bill No. 2 (2021–2022 Reg. Sess.) § 5.5.) We discuss the 2021 amendments in a later section of this opinion.

Wyatt petitioned the Kern County Superior Court for a writ of mandate, temporary restraining order, and preliminary injunction seeking to enjoin KHSD from disclosing the subject records in response to the CPRA requests. Wyatt argued, among other things, the subject records did not relate to "sustained" findings as defined in subdivision (b) of Penal Code section 832.8, because Wyatt was never notified of the findings or afforded an "opportunity for an administrative appeal pursuant to Sections 3304 and 3304.5 of the Government Code."

The trial court granted Wyatt's petition, ordered the issuance of a writ of mandate, and issued an injunction prohibiting disclosure of the subject records.

KHSD appeals from the order granting the writ of mandate and injunction and denying KHSD's motion for reconsideration, and from the judgment entered pursuant to said order. We affirm, in part, and reverse, in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Wyatt was previously employed by KHSD as a peace officer in the KHSD police department. While Wyatt was employed by KHSD, an internal affairs (IA) investigation was opened into certain allegations involving Wyatt.

By the time the IA investigation was completed on June 30, 2017, however, KHSD no longer considered Wyatt an active KHSD employee due to certain statutory elections made by Wyatt. The true status of Wyatt's employment with KHSD at or about the time of the IA investigation appears to be in dispute and the subject of separate litigation.[4]

---

[4] In its publicly filed ruling on KHSD's motion for reconsideration, the trial court wrote: "There is a dispute between the parties as to whether [Wyatt's] employment was terminated by [KHSD], or by [Wyatt's] resignation. That issue is apparently the subject of other litigation…. Nothing in this ruling or the court's prior ruling should be viewed as a determination by this court regarding the 'constructive termination v. resignation' issue."

3.

In November of 2017, Wyatt requested he be permitted to review his KHSD personnel records. He made the request because he had "been offered a position with the Kern County [District Attorney's] Office as an Investigator," and it was about to conduct a background investigation of Wyatt. Wyatt suspected "KHSD may have placed erroneous [IA] or disciplinary information in [his] file in an attempt to dissuade any Law Enforcement agencies from hiring [him]." Wyatt's request was granted.

Upon conducting a review of his personnel records, Wyatt "observed some interesting notations … made on some of the documents, indicating 'Per Tenile.' "[5] Wyatt requested documents related to the notations and "located an envelope which was labeled as an IA investigation." Among the documents contained in the envelope was an "IA findings document … that listed two sustained IA allegations … for 'Misuse of [CLETS]'[6] and 'Dishonesty.' " Wyatt contends he was "never … informed nor notified of any [such] findings."

Within days of Wyatt's review of his files, a Kern County District Attorney Investigator (D.A. Investigator) reviewed Wyatt's personnel files as part of the D.A. Investigator's background investigation into Wyatt. As noted in his publicly filed declaration, the D.A. Investigator "specifically sought information from [Wyatt's personnel] file that would relate to dishonesty or any Sustained [IA] findings and [he] found none to be contained within [Wyatt's] file."

Seventeen months later, on April 25, 2019, KHSD notified Wyatt by letter that it had received "multiple [CPRA requests] related to the investigation and discipline of peace officers employed by" the KHSD police department "pursuant to [Senate

---

Like the trial court before us, we express no opinion on whether a separation of employment occurred due to constructive termination, resignation, or otherwise. We consider the issue immaterial to our resolution of the questions presented on appeal.

[5] No explanation of these notations is provided in the record.

[6] CLETS is an acronym for the California Law Enforcement Telecommunications System. (See Gov. Code, § 15150 et seq.)

4.

Bill] 1421." The letter stated, "[KHSD] has reviewed its files and has located documents from [Wyatt's] personnel file responsive to these requests" (i.e., the subject records). The letter indicated that, unless Wyatt provided KHSD "with a copy of an appropriate court-issued protective order precluding" production of the subject records, KHSD intended to produce them in response to the CPRA requests.

On May 14, 2019, Wyatt filed an ex parte application for a writ of mandamus, temporary restraining order (TRO), and order to show cause for a preliminary injunction to enjoin KHSD's release of the subject records (a "reverse-CPRA action"[7]) and for related relief. On or about May 28, 2019, Wyatt amended his petition. The relief sought by Wyatt in his amended petition was for a TRO, preliminary injunction, and permanent injunction "enjoining [KHSD] from releasing the [subject] records … in response" to the CPRA requests; for alternative and peremptory writs of mandate so enjoining KHSD; for alternative and peremptory writs of mandate "commanding [KHSD] to remove any documents from [Wyatt's] file … not placed there in accordance with [Government] Code [section] 3300 et seq. and after a determination from an adjudicated hearing[;]" and for a hearing "pursuant to [Government] Code Section 3309.5[8] so that a factual determination may be made … regarding the actual nature of the documents in question and their appropriate legal classification pursuant to … Penal Code Section 832.8(b)."

---

**7** "A mandamus action initiated by an interested party designed to prevent disclosure of public records falling under an exemption to the disclosure requirements provided in the [CPRA] is commonly referred to as a reverse-CPRA action." (*National Conference of Black Mayors v. Chico Community Publishing, Inc.* (2018) 25 Cal.App.5th 570, 575, fn. 2.)

**8** Subdivision (d)(1) of Government Code section 3309.5 provides: "In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer."

On May 30, 2019, the trial court granted a TRO prohibiting KHSD from releasing the subject records under the CPRA, issued an alternative writ of mandate, and set a hearing date and briefing schedule for the parties. A formal order to that effect was filed on June 24, 2019.

The hearing on Wyatt's writ petition went forward on August 2, 2019. A minute order of that same date noted the matter was "heard and argued by counsel," "[KHSD] personnel records for … Wyatt [were] submitted to the Court for in camera review," and the "[m]atter stands submitted to the Court."

On August 23, 2019, the trial court granted Wyatt's petition. The ruling stated, "[KHSD] and its agents are enjoined and restrained from disclosing the subject records in response to requests under the [CPRA]. A writ of mandate will issue commanding [KHSD] to: (1) refrain from treating the subject records as 'relating to an incident in which a sustained finding was made,' and (2) respond to persons making CPRA requests consistent with this decision." The court directed Wyatt to "prepare a proposed order, injunction and writ," ruled on [KHSD's] objections to the declarations submitted in support of Wyatt's petition, and noted the court had "reviewed in camera a total of 77 pages" of subject records. (Italics omitted.)

In its August 23, 2019, ruling, the trial court found, among other things, that (1) Wyatt "is a peace officer formerly employed by respondent KHSD," (2) during the period February 5, 2019, to May 1, 2019, KHSD received CPRA requests from several parties seeking "records subject to disclosure under Penal Code [section] 832.7(b)," (3) "KHSD identified records pertaining to [Wyatt] that it deemed responsive to the requests …, and notified [Wyatt] of its intent to disclose them," (4) Wyatt "had no opportunity for an administrative appeal," and (5) Wyatt had notice of the IA investigation and " 'ultimately became aware that a determination had been made' " [as a result of his November 2017 review of his personnel files]. These findings do not appear to be in dispute.

6.

The trial court determined KHSD was "not relieve[d] … of its obligation to give proper notice of a 'final determination' [to Wyatt] if one had been made." The court stated, "Placing a 'memo to file' among other records – there one moment [Nov. 28], and gone the next [Nov. 30] – was not sufficient" to provide such notice.[9] The court ruled "[t]he subject records relate to an incident for which there was no 'sustained finding' within the meaning of Penal Code [section] 832.7 [subdivision] (b), and are therefore confidential and exempt from disclosure under state law," citing Government Code section 6254, subdivision (k)[10] and Penal Code section 832.7, subdivision (a).[11]

On September 9, 2019, KHSD moved the trial court to reconsider its ruling. In its motion, KHSD argued that, in connection with the prior hearing of Wyatt's petition, KHSD was prohibited from disclosing, in open court, certain material facts related to Wyatt's employment and the IA investigation without violating Wyatt's privacy interests. KHSD requested that the court "enter a new order allowing for a closed hearing for consideration of the necessary facts, or allow [KHSD] to submit additional facts under seal." Wyatt opposed the motion to reconsider and argued no "new" facts, circumstances, or law were being presented to the trial court.

On October 18, 2019, the trial court continued the hearing on KHSD's motion to reconsider to December 18, 2019. It ordered the hearing closed to the public and

[9] The trial court's comment appears to refer to the fact that the IA findings and related documents were available to Wyatt upon review of his personnel files but were not similarly available to the D.A. Investigator.

[10] Subject to certain exceptions not relevant here, subdivision (k) of Government Code section 6254 exempts from disclosure under the CPRA "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (Gov. Code, § 6254, subd. (k).)

[11] In its August 23, 2019, ruling, the trial court also stated, "Nothing in this decision is intended as a finding that [Wyatt] did, or did not, commit a wrongful act or omission during his employment with … KHSD."

7.

authorized the parties to file supplemental briefs under seal.**12** All further briefs and declarations filed by the parties in connection with the proceedings were filed under seal.

On December 24, 2019, the trial court issued its ruling to deny the motion for reconsideration. In its ruling, the court stated, "[KHSD] has presented the court with additional information in the motion for reconsideration, specifically, that [Wyatt] was no longer employed with [KHSD] at the time [KHSD] made a determination on the matter under [IA] investigation. [KHSD] argues that [Wyatt] had no right to an appeal because the subject finding was made *after* [Wyatt] resigned, citing *Haight v. City of San Diego* ('*Haight*') (1991) 228 Cal.App.3d 413. [Wyatt] contends that he was 'coercively forced out of his position,' and that '*Haight* has absolutely nothing to do with sustained findings….' "**13** (Fn. omitted.) Consistent with its prior ruling, the court determined "[t]he subject records relate to an incident for which there was no 'sustained finding' within the meaning of Penal Code [sections] 832.7 [subdivision] (b) and 832.8 [subdivision] (b), and are therefore confidential and exempt from disclosure under state law."

---

**12** Similar orders were issued on appeal. On January 21, 2021, KHSD moved for leave to file redacted and confidential versions of its respondent's brief and appellant's appendix. The motion was unopposed. On February 16, 2021, this court granted KHSD's motion and further authorized the filing of a redacted and confidential version of its reply brief, if any. On June 10, 2021, Wyatt filed a similar motion to file a redacted and confidential respondent's brief. The motion was granted on June 11, 2021. In light of these orders and our disposition of this matter, we limit our discussion of facts to those available in the public record. The public record contains a sufficient recitation of relevant facts in support of our decision.

**13** In a footnote to its December 24, 2019, ruling, the trial court noted, "[t]here is a dispute between the parties as to whether [Wyatt's] employment was terminated by [KHSD], or by [Wyatt's] resignation. That issue is apparently the subject of other litigation. This court previously assumed based on the records provided that [Wyatt] was a 'former employee,' but the timing and manner of the termination of [Wyatt's] employment was not deemed essential to a [*sic*] deciding the CPRA issue. Nothing in this ruling or the court's prior ruling should be viewed as a determination by this court regarding the 'constructive termination v. resignation' issue."

8.

On March 11, 2020, the trial court issued its order granting Wyatt's application for a peremptory writ of mandate and injunctive relief. On April 9, 2020, KHSD appealed the court's March 11, 2020, order. That same day, April 9, 2020, the court issued its judgment in the matter consistent with its prior rulings. Specifically, the judgment adjudged and decreed "[t]he [s]ubject [r]ecords are confidential and exempt from disclosure under state law, in accordance with Government Code section 6254(k) and Penal Code section 832.7(a)." It further provided, in part, "[a] peremptory writ of mandate shall issue from this Court commanding [KHSD] to (a) refrain from treating the [s]ubject [r]ecords as 'relating to an incident in which a sustained finding was made'; [and] (b) respond to persons making requests under the [CPRA] consistent with this Judgment." The judgment also "enjoined and restrained [KHSD] from disclosing the subject records in response to requests under the CPRA." On April 23, 2020, the court issued a peremptory writ of mandate consistent with the judgment.

Wyatt served notice of entry of the judgment on April 28, 2020. On May 13, 2020, KHSD timely appealed the judgment.

## DISCUSSION

### I.    Standard of Review

The parties disagree as to the proper standard of review. KHSD contends the trial court's rulings and judgment should be reviewed de novo because a question of statutory interpretation is presented, and the facts are not in dispute. Wyatt argues the trial court's issuance of an injunction must be viewed under an abuse of discretion standard, and "even in the statutory writ method of reviewing CPRA cases other than reverse-CPRA matters, the standard of review would not be de novo, but rather would utilize the independent judgment test." Both parties are correct, in part, and the disagreement among them is minimal.

"Issues of statutory construction as well as the application of that construction to a particular set of facts are questions of law." (*Coburn v. Sievert* (2005) 133 Cal.App.4th

9.

1483, 1492.) We review questions of law independently and "decide them without deference to the decision made below." (*Ibid*.) "Questions of fact are reviewed by giving deference to the trial court's decision." (*McGhan Medical Corp. v. Superior Court* (1992) 11 Cal.App.4th 804, 809.) A factual finding will be accepted on appeal if supported by substantial evidence. (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739.)

" 'To the extent the trial court resolved questions of law on undisputed facts, we review the trial court's rulings de novo.' " (*Baker Marquart LLP v. Kantor* (2018) 22 Cal.App.5th 729, 738.) Here, the facts we deem relevant to resolution of the issues on appeal do not appear to be in dispute.[14]

With regard to Wyatt's contention that "the statutory writ method of reviewing CPRA cases other than reverse-CPRA matters" calls for utilization of the "independent judgment test," we make two comments. First, as discussed in part II.A. of this opinion, a "reverse-CPRA action" is not authorized under the CPRA. Rather, it falls within the category of traditional mandate. Second, although there are differences between a de novo and independent standard of review, where, as here, the relevant facts are undisputed, no testimony was provided, and no credibility determinations were made, "independent review is the equivalent of de novo review." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1021.)

Wyatt is correct, however, that the granting of a preliminary (or permanent) injunction is reviewed for abuse of discretion. (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390 [permanent injunction]; *Upland Police Officers Assn. v. City of Upland* (2003) 111 Cal.App.4th 1294, 1300 [preliminary injunction and permanent injunctions under Government Code section

---

[14] As mentioned, we acknowledge the parties dispute the proper characterization of Wyatt's separation from his employment at KHSD but consider the issue immaterial to our resolution of the questions presented on appeal. See footnote 13, *ante*.

3309.5]; *Amgen Inc. v. California Correctional Health Care Services* (2020) 47 Cal.App.5th 716, 731 [preliminary injunction in reverse-CPRA action].)  A trial court abuses its discretion if its decision "rests on an error of law."  (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 742.)

## II.  Procedural Objections

### A.  *KHSD Has a Right to Appellate Review of the Judgment*

Wyatt contends this appeal must be dismissed because KHSD "has no right to appeal an adverse judgment under the CPRA."  KHSD argues, however, that successful reverse-CPRA actions do not fall within the scope of Government Code section 6259.  We agree with KHSD.

Wyatt relies on Government Code section 6259 which provides, in relevant part:

> "In an action filed on or after January 1, 1991, an order of the court, either *directing disclosure by a public official or supporting the decision of the public official refusing disclosure*, is not a final judgment or order within the meaning of Section 904.1 of the Code of Civil Procedure from which an appeal may be taken, but shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ. Upon entry of any order pursuant to this section, a party shall, in order to obtain review of the order, file a petition within 20 days after service upon the party of a written notice of entry of the order, or within such further time not exceeding an additional 20 days as the trial court may for good cause allow…."  (Gov. Code, § 6259, subd. (c), italics added.)

Wyatt's position on the correct means of obtaining appellate review of the trial court's decision is at odds with the plain language of Government Code section 6259. Subdivision (c) of section 6259 is limited in its application to orders that either "direct[] disclosure" of records pursuant to the CPRA or "support[] the decision of the public official refusing disclosure."  (Gov. Code, § 6259, subd. (c).)  The judgment in this case does neither.  Rather, it prohibits disclosure and disapproves KHSD's decision to disclose the subject records.

11.

In *Marken v. Santa Monica-Malibu Unified School Dist.* (2012) 202 Cal.App.4th 1250 (*Marken*), the court noted the CPRA statutory scheme does not authorize or address reverse-CPRA actions. (*Id.* at p. 1267.) "[A]lthough the CPRA provides a specific statutory procedure for the resolution of disputes between the party seeking disclosure and the public agency, no comparable procedure exists for an interested third party to obtain a judicial ruling precluding a public agency from improperly disclosing confidential documents." (*Ibid.*; see Gov. Code, § 6258 [providing a procedure to enforce a person's "right to inspect or to receive a copy of any public record or class of public records" but not to prohibit disclosure].) Thus, the method for obtaining judicial review of a judgment in a reverse-CPRA action is not governed by the CPRA.

"An order granting or denying a petition for writ of mandate that disposes of all of the claims between the parties is an immediately appealable final judgment." (*City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 190, fn. omitted.) The judgment in this case disposed of all issues between the parties. Accordingly, it is a final judgment (Code Civ. Proc., § 1064) and may be appealed under Code of Civil Procedure section 904.1. (Code Civ. Proc., § 904.1, subd. (a)(1); *Bergeson*, at p. 190.)

Based on the foregoing, we conclude KHSD's appeal is a proper procedural vehicle to obtain appellate review of the judgment and the order upon which it was premised.[15]

---

[15] Even if we were to assume a writ of mandate is the proper means of obtaining appellate review of the judgment, KHSD correctly notes that this court may treat an otherwise improper appeal as a petition for an extraordinary writ where "(1) the briefs and record contain in substance all the elements prescribed … for an original mandate proceeding and (2) there are extraordinary circumstances justifying the exercise of that discretionary power." (*Coronado Police Officers Assn. v. Carroll* (2003) 106 Cal.App.4th 1001, 1006.) Those elements are met here. The briefs and record comply with rule 8.486 of the California Rules of Court pertaining to appellate writ petitions, and circumstances justify resolution of the matter on appeal – i.e., the case involves novel issues of public interest that are likely to recur; absent a right of appeal KHSD would have no adequate remedy at law; and the notices of appeal were filed

**B.** *KHSD Has Standing to Appeal*

Wyatt contends KHSD lacks standing to bring this appeal. We disagree.

The right to appeal a civil case is codified at Code of Civil Procedure section 902, which provides, in relevant part: "Any party aggrieved may appeal in the cases prescribed in this title." (Code Civ. Proc., § 902.) "[S]ection 902 is a remedial statute, which should be 'liberally construed,' with 'any doubts resolved in favor of the right to appeal.' " (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 540 (*Ajida*).)

Wyatt cites to *County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737 for the proposition that "[a] party is legal 'aggrieved' for appellate purposes only if his or her 'rights are injuriously affected by the judgment' " and that "[t]he rights or interests 'injuriously affected' must be 'immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment."

Wyatt contends KHSD is not aggrieved by the judgment – only the news agencies that requested the subject records are aggrieved. Wyatt contends KHSD is not aggrieved because only the requesting parties, not KHSD, are being denied access to the subject records – i.e., KHSD already has the subject records in its possession.

KHSD counters that it is aggrieved because the judgment is binding on it, and "will bind and otherwise inform the KHSD's actions in substantially future matters." In support of its position, KHSD cites to a line of cases that hold "[a] person who would be bound by the doctrine of res judicata, whether or not a party of record, is a party sufficiently aggrieved to entitle him to appeal." (E.g., *Leoke v. County of San Bernardino* (1967) 249 Cal.App.2d 767, 771; *Life v. County of Los Angeles* (1990) 218 Cal.App.3d 1287, 1292; *Estate of Sloan* (1963) 222 Cal.App.2d 283, 291–292; *Harris v. Alcoholic Beverage Controls Appeals Board* (1966) 245 Cal.App.2d 919; *Consumer Advocacy*

within the statutory time frame for seeking writ review. (See *Interinsurance Exchange of the Automobile Club v. Superior Court* (2007) 148 Cal.App.4th 1218, 1225.)

13.

*Group, Inc. v. Kintetsu Enterprises of America* (2006) 141 Cal.App.4th 46, 58; *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295.)

We think *Koehn v. State Board of Equalization* (1958) 50 Cal.2d 432 (*Koehn*), and similar cases are particularly instructive. *Koehn* stands for the proposition that a writ of mandamus issued to a state agency may be challenged by the agency. (*Id.* at pp. 435–436.) The rule was stated in the early case of *Simpson v. Police Court of Riverside* (1911) 160 Cal. 530 (*Simpson*), in which the plaintiff, a holder of a promissory note, brought suit against the defendant, the maker of the note. (*Id*. at p. 531.) The action was brought in the police court established by the charter for the City of Riverside. (*Ibid*.) The defendant demurred on the ground the police court lacked jurisdiction to decide the matter. (*Ibid*.) The police court overruled the demurrer, and the defendant then sought and obtained a writ of prohibition from the superior court prohibiting the police court from taking further action in the matter. (*Ibid*.) The police court appealed. (*Ibid*.)

Noting that the police court was "not a party to the action" between the litigants, *Simpson* held the police court has "a right to appeal from any judgment against it prohibiting it from proceeding in that action, and has a right to be relieved from any writ improperly issued so prohibiting it." (*Simpson*, *supra*, 160 Cal. at p. 532.) In reiterating the rule set forth in *Simpson*, the *Koehn* court, citing numerous cases, wrote, "The rule of the *Simpson* case has been followed and accepted without discussion or criticism in later cases which determined on the merits an appeal taken by a tribunal from a judgment granting a writ which would have the effect of limiting or impairing the jurisdiction of the tribunal *or of controlling its functioning*." (*Koehn*, *supra*, 50 Cal.2d at p. 435, italics added.) We conclude KHSD, as the agency whose actions are enjoined, has standing to appeal the judgment.

Our conclusion is further supported by the recognition that, in a reverse-CPRA action, the requesting party or parties need not participate in the litigation and may, instead, "elect to allow the agency itself to defend its decision" to release records.

14.

(*Marken*, *supra*, 202 Cal.App.4th at p. 1268.)  It would be an anomaly to confer standing on KHSD to defend its decision to release the subject records in the superior court (and, by doing so, essentially serve as a proxy for the requesting parties) but to deny it the right to appeal upon receiving an unfavorable judgment.  The policy of liberally construing Code of Civil Procedure section 902 and resolving doubts "in favor of the right to appeal" militates in favor of recognizing KHSD's standing to appeal.  (*Ajida*, *supra*, 87 Cal.App.4th at p. 540.)

**III.     The Subject Records Do Not Relate to Sustained Findings Under the 2018 Amendments to Penal Code Sections 832.7 and 832.8**

### A.     *Relevant Penal Code Provisions*

At issue here is whether the subject records relate to "sustained" findings under the 2018 amendments to Penal Code sections 832.7 and 832.8, so as to make the records subject to disclosure under the CPRA.

Penal Code sections 832.7 and 832.8, and related statutes "were enacted to codify the California Supreme Court decision in *Pitchess v. Superior Court*, *supra*, 11 Cal.3d 531, which permitted discovery of police officer files on a proper showing of materiality, relevance and necessity, and to curtail record shredding and discovery abuses that allegedly occurred in the wake of the *Pitchess* decision.  [Citation.]  [¶]  The *Pitchess* statutory scheme recognizes that evidence contained in a law enforcement officer's personnel file may be relevant in a lawsuit, but that the officer 'has a strong privacy interest in his or her personnel records and that such records should not be disclosed unnecessarily.' "  (*Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1085.)

Immediately prior to the 2018 amendments, Penal Code section 832.7 prohibited disclosure of peace officer and custodial officer personnel records and certain other related records maintained by state and local agencies except when obtained through law and motion procedures identified in Evidence Code sections 1043 and 1046.  In 2018, the

15.

California Legislature passed Senate Bill 1421 to amend section 832.7.  The 2018 amendments became effective January 1, 2019, and allowed disclosure of a specified subset of such records pursuant to a CPRA request.

At the time the CPRA requests were made in 2019, the version of Penal Code section 832.7 then in effect provided, in relevant part:

> "(a) Except as provided in subdivision (b), the personnel records of peace officers and custodial officers and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code.  This section shall not apply to investigations or proceedings concerning the conduct of peace officers or custodial officers, or an agency or department that employs those officers, conducted by a grand jury, a district attorney's office, or the Attorney General's office.

> "(b)(1) *Notwithstanding subdivision (a), subdivision (f) of Section 6254 of the Government Code, or any other law, the following peace officer or custodial officer personnel records and records maintained by any state or local agency shall not be confidential and shall be made available for public inspection pursuant to the California Public Records Act* (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code):

> "(A) A record relating to the report, investigation, or findings of any of the following:

> "(i) An incident involving the discharge of a firearm at a person by a peace officer or custodial officer.

> "(ii) An incident in which the use of force by a peace officer or custodial officer against a person resulted in death, or in great bodily injury.

> "(B)(i) Any record relating to an incident in which a sustained finding was made by any law enforcement agency or oversight agency that a peace officer or custodial officer engaged in sexual assault involving a member of the public.

> "[¶] … [¶]  (C) Any record relating to an incident in which a sustained finding was made by any law enforcement agency or oversight agency of dishonesty by a peace officer or custodial officer directly relating

16.

to the reporting, investigation, or prosecution of a crime, or directly relating to the reporting of, or investigation of misconduct by, another peace officer or custodial officer, including, but not limited to, any sustained finding of perjury, false statements, filing false reports, destruction, falsifying, or concealing of evidence." (Former Pen. Code, § 832.7, subds. (a), (b)(1).) (Stats. 2018, c. 988 (Sen. Bill 1421), § 2, italics added.)

The term "sustained" as used in Penal Code section 832.7 is (and, at the time of the CPRA requests, was) defined in Penal Code section 832.8, as follows: " 'Sustained' means a final determination by an investigating agency, commission, board, hearing officer, or arbitrator, as applicable, *following an investigation and opportunity for an administrative appeal pursuant to Sections 3304 and 3304.5 of the Government Code*, that the actions of the peace officer or custodial officer were found to violate law or departmental policy. (Pen. Code, § 832.7, subd. (b), italics added.)

**B.** *Public Record Disclosure Under the CPRA*

"The CPRA, codified at [Government Code] section 6250 et seq., provides for the inspection of public records maintained by state and local agencies." (*California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal. App. 4th 810, 822.) Government Code section 6250 provides: "In enacting this chapter, the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250.) " 'Disclosure of public records thus involves two fundamental yet competing interests: (1) prevention of secrecy in government; and (2) protection of individual privacy.' " (*Gilbert v. City of San Jose* (2003) 114 Cal.App.4th 606, 610 (*Gilbert*).)

"The CPRA 'includes two exceptions to the general policy of disclosure of public records: (1) materials expressly exempt from disclosure pursuant to [Government Code] section 6254 …; and (2) the "catchall exception" of [Government Code] section 6255, which allows a government agency to withhold records if it can demonstrate that, on the facts of a particular case, the public interest served by withholding the records clearly

17.

outweighs the public interest served by disclosure.' " (*Gilbert*, *supra*, 114 Cal.App.4th at pp. 610–611.)

Citing article I, section 3 of the California Constitution, KHSD contends this court must broadly construe the CPRA in favor of disclosure. Said Constitutional provision reads, in relevant part:

> "(b)(1) The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny.

> "(2) A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access…." (Cal. Const. art I, § 3, subd. (b)(1), (b)(2).)

Wyatt counters by noting said Constitutional provision also provides:

> "Nothing in [subdivision (b)] supersedes or modifies the right of privacy guaranteed by Section 1 or affects the construction of any statute, court rule, or other authority to the extent that it protects that right to privacy, including any statutory procedures governing discovery or disclosure of information concerning the official performance or professional qualifications of a peace officer." (Cal. Const. art. I, § 3, subd. (b)(3).)

### C.     *The Parties' Competing Construction of Provisions of the CPRA and Penal Code*

In Wyatt's amended petition to the trial court, he contended the subject records did not meet the definition of "record[s] relating to an incident in which a sustained finding was made," as used in Penal Code section 832.7, because he was never given notice of the determination or an opportunity to be heard.

KHSD argues it was not required to provide Wyatt an administrative opportunity to appeal because Wyatt "voluntarily separated from his employment with the [KHSD]." KHSD's argument is premised largely on the language of Government Code section 3304 which provides, in part: "No punitive action, nor denial of promotion on grounds other

18.

than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required … *without providing the public safety officer with an opportunity for administrative appeal*." (Gov. Code, § 3304, subd. (b), italics added.) KHSD contends the "right to administrative appeal under [Government Code] section 3304, subdivision (b), arises only for 'a peace officer against whom disciplinary action is taken ….' " In its motion for reconsideration, KHSD argued, "a right to an administrative appeal does not attach to a finding of an investigation until a decision regarding discipline has been made." In essence, KHSD argues Wyatt's separation of employment precluded KHSD from imposing professional discipline against Wyatt and, as a result, there was no need for KHSD to provide Wyatt with notice and an opportunity for administrative appeal. KHSD contends Wyatt's voluntary separation of employment from KHSD effectively waived his right to any administrative appeal.

KHSD also contends Wyatt "had the opportunity to challenge the findings against him … after receiving actual notice of them in November 2017, which he again failed to do,"[16] citing *Murden v. County of Sacramento* (1984) 160 Cal.App.3d 302, 312 (*Murden*). The argument that Wyatt had such an opportunity does not appear to have been raised in the trial court. " ' "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." … Such arguments raised for the first time on appeal are generally deemed forfeited.' " (*Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635.) Moreover, KHSD does not articulate what administrative (or other) process it contends would have been available to Wyatt to challenge the IA findings. Even if this contention was preserved on appeal, the mere citation to *Murden* in

---

[16] KHSD's choice of wording to suggest that Wyatt "*again*" failed to challenge the IA findings is perplexing. We are unable to discern from the record what is meant by the term "*again*."

19.

support of the statement, without any substantive discussion of how it applies, is insufficient to properly present the issue to his court.[17]  (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument … allows this court to treat the contentions as waived"].)  For these reasons, we conclude KHSD has forfeited the argument that there was some other process available to Wyatt to challenge the IA findings.

**D.**  ***Interpretation of the 2018 Amendments to Penal Code Sections 832.7 And 832.8***

**1.  Principles Of Statutory Construction**

" ' " 'When we interpret a statute, "[o]ur fundamental task … is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy."  [Citation.]  "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " ' " (*Becerra v. Superior Court* (2020) 44 Cal.App.5th 897, 917 (*Becerra*).)

"As a court, we have a 'limited role in the process of interpreting enactments from the political branches of our state government.'  [Citation.]  Our role is 'not to establish policy' [citation] or to question legislative policy choices [citation].  Rather, 'we follow

---

[17] *Murden*, *supra*, 160 Cal.App.3d 302 did not involve Penal Code sections 832.7 or 832.8, nor Government Code sections 3304, 3304.5 or 6250 et seq.

the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, " ' "whatever may be thought of the wisdom, expediency, or policy of the act." ' " ' " (*Becerra*, *supra*, 44 Cal.App.5th at p. 917.)

In *Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272 (*Copley Press*), the California Supreme Court considered "the extent, if any, to which the [CPRA] … requires disclosure to a newspaper publisher of records of the County of San Diego Civil Service Commission … relating to a peace officer's administrative appeal of a disciplinary matter." (*Id*. at p. 1279.) In examining the issue, the high court had occasion to examine former Penal Code sections 832.5, 832.7, and 832.8 as they existed prior to the 2018 amendments. (*Copley Press*, at p. 1298.)

In arguing for disclosure of peace officer disciplinary records, the plaintiff news agency in *Copley Press* argued on public policy grounds that " 'public scrutiny of disciplined officers is vital to prevent the arbitrary exercise of official power by those who oversee law enforcement and to foster public confidence in the system, especially given the widespread concern about America's serious police misconduct problems.' " (*Copley Press*, *supra*, 39 Cal.4th at p. 1298.) In response, our state high court noted that "competing policy considerations … may favor confidentiality, such as … protecting … peace officers from publication of frivolous or unwarranted charges, and maintaining confidence in law enforcement agencies by avoiding premature disclosure of groundless claims of police misconduct. [Citations.] In enacting and amending [now former] sections 832.5, 832.7, and 832.8, the Legislature, …, made the policy decision 'that the desirability of confidentiality in police personnel matters *does* outweigh the public interest in openness.' " (*Id.* at p. 1298, fn. omitted.) Our high court wrote: "[I]t is for the Legislature to weigh the competing policy considerations. As one Court of Appeal has explained in rejecting a similar policy argument: '[O]ur decision … cannot be based on such generalized public policy notions. As a judicial body, … our role [is] to interpret the laws as they are written.' " (*Id*. at p. 1299, fn. omitted.)

21.

"[A] court's 'overriding purpose' in construing a statute is 'to give the statute a *reasonable* construction conforming to [the Legislature's] intent [citation], keeping in mind that "the meaning of the enactment may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." ' " (*Copley Press*, *supra*, 39 Cal.4th at p. 1299, fn. 22.)

## 2. Legislative History of the 2018 Amendments to Penal Code Sections 832.7 and 832.8

KHSD requested we take judicial notice of various Legislative history documents. We grant the request.[18]

In introducing Senate Bill 1421 to the Legislature, the author of the bill indicated it was intended to "benefit[] law enforcement and the communities they serve by helping build trust" and will "promote better policies and procedures that protect everyone." (Sen. Comm. on Pub. Safety on Sen. Bill 1421 (2017–2018 Reg. Sess.) Apr. 17, 2018, p. 7.) In enacting Senate Bill 1421, the Legislature found and declared:

> "(a) Peace officers help to provide one of our state's most fundamental government services. To empower peace officers to fulfill their mission, the people of California vest them with extraordinary authority – the powers to detain, search, arrest, and use deadly force. Our society depends on peace officers' faithful exercise of that authority. Misuse of that authority can lead to grave constitutional violations, harms to liberty and the inherent sanctity of human life, as well as significant public unrest.

---

**18** We also grant KHSD's request that we judicially notice the decision *Felicijan v. Santa Ana Educators Assn*. (Mar. 10, 2009) PERB Decision No. 2008, rendered by the California Public Employment Relations Board. We deny, however, KHSD's request to judicial notice that 39 months from May 13, 2017, is August 13, 2020, on grounds it is irrelevant to our disposition. (*AL Holding Co. v. O'Brien & Hicks, Inc.* (1999) 75 Cal.App.4th 1310, 1313, fn. 2 ["court must decline to take judicial notice of material that is not relevant"].)

"(b) The public has a right to know all about serious police misconduct …. Concealing crucial public safety matters such as officer violations of civilians' rights, …, undercuts the public's faith in the legitimacy of law enforcement, makes it harder for tens of thousands of hardworking peace officers to do their jobs, and endangers public safety." (Sen. Bill No. 1421, approved by Governor, Sept. 30, 2018, Legis. Counsel's Digest (2017–2018 Reg. Sess.) Stats. 2018, ch. 988, § 1.)

"[Senate Bill] 1421 opens police officer personnel records in very limited cases, … allowing local law enforcement agencies and law enforcement oversight agencies to provide greater transparency around only the most serious police complaints. Additionally, [Senate Bill] 1421 endeavors to protect the privacy of personal information of officers and members of the public who have interacted with officers." (Sen. Comm. on Pub. Safety on Sen. Bill 1421 (2017–2018 Reg. Sess.) Apr. 17, 2018, p. 8.) In enacting [Senate Bill] 1421, the Legislature attempted to strike an appropriate balance between the competing considerations of peace officer privacy and public disclosure of peace officer misconduct. (*Id*., at pp. 8–9.)

In support of its appeal, KHSD quotes from various reports and analyses prepared by the Legislature, as follows: " '[Senate Bill 1421] permits inspection of specified peace … officer records pursuant to the [CPRA]. This bill provides that records related to reports, investigations, or findings may be subject to disclosure if they involve the following: … incidents relating to sustained findings of dishonesty by a peace officer' " (Sen. Comm. on Pub. Safety on Sen. Bill 1421 (2017–2018 Reg. Sess.) Apr. 17, 2018, p. 2.) " 'Release of [peace-officer] personnel records contemplated in this bill is precisely the kind of disclosure which will promote public scrutiny of, and accountability for, law enforcement.' " (Assem. Comm. on Pub. Safety on Sen. Bill 1421 (2017–2018 Reg. Sess.) June 26, 2018, p. 7.)

"[T]he legislative intent behind Senate Bill 1421 was to provide transparency regarding instances of an officer's use of significant force and sustained findings of officer misconduct by allowing public access to officer-related records maintained either

by law enforcement employers or by any state or local agency with independent law enforcement oversight authority." (*Becerra*, *supra*, 44 Cal.App.5th at p. 921.)

### 3. Analysis

For convenience, we reiterate the following undisputed facts. The findings made as part of the IA investigation were described in an IA findings document as "sustained findings," yet KHSD never notified Wyatt that the IA findings had been made, and Wyatt was not provided an opportunity to be heard in order to challenge the findings. That is, Wyatt was not provided an opportunity for an administrative appeal pursuant to Government Code sections 3304 or 3304.5, or otherwise. Approximately one and one-half years later, KHSD notified Wyatt of the CPRA requests. The CPRA requests sought documents which were newly made disclosable pursuant to the CPRA requests. KHSD notified Wyatt it had identified documents in his personnel files responsive to the CPRA requests and, unless he provided KHSD with a court order prohibiting disclosure, the documents so identified would be produced to the requesting parties. The subject records include the IA findings document and related documents.

At the August 2, 2019, hearing on Wyatt's amended petition, counsel for KHSD explained the lack of notice and opportunity for an administrative appeal: "In this instance, there was an investigation, obviously, and a finding, so the investigation has to be closed within a year, but the notice to the officer doesn't take place necessarily until a decision on discipline has been filed because – just because there's a sustained finding, doesn't necessarily mean that discipline will follow. Sometimes, based on timing purposes or other factors, an employer will notify the officer that there's been a sustained finding but no discipline will follow. That's an option of a department. Right or wrong, that's an option…."

Counsel for KHSD continued: "There are reasons why as soon as the investigation was concluded that maybe an officer wouldn't have been noticed. There are oftentimes that officers are on leave for various reasons, including medical. Sometimes

24.

it's not necessarily pragmatic especially if someone is an officer – situation may involve where an officer is out on medical leave related to a psychiatric claim, and any notice of discipline may result in exaggerating or contributing to that condition. And so employers will wait to decide what is going to happen, not necessarily make a decision on discipline until the officer returns. Those are instances of things that could occur of [*sic*] why there may be a delay between the conclusion of an investigation and a notice to an officer. And I'm speaking in generality so that I don't speak specifically to this case."

Counsel for KHSD stated, "So this – potentially the investigation is a part of any officer's file, regardless of the discipline that follows which is, I think, is the distinction that we need to make here. There is an investigation and the right to follow that investigation, and then there's the rights of the officer under [the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.)], which relates to discipline and the right to appeal and respond, etcetera. And there is a distinct line under the Government Code under [section] 3300.

Distilling KHSD's argument to its essence, an "administrative appeal pursuant to Sections 3304 and 3304.5," as contemplated under subdivision (b) of Penal Code section 832.8, is only applicable when the law enforcement employer intends to seek discipline against an officer. Absent an intent to impose discipline on an officer, a law enforcement employer is not required to provide that officer with notice of "sustained" findings and, absent such an intent, no right to an administrative appeal pursuant to Sections 3304 and 3304.5 arises. (See Gov. Code, § 3304, subd. (b) ["No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal"].) Because KHSD did not consider Wyatt actively employed by KHSD at the time the IA investigation was completed and the alleged "sustained" findings were made, KHSD argues it could not

impose any punitive action or denial of promotion which would give Wyatt the right to an administrative appeal. Consequently, KHSD asks that this court interpret Penal Code sections 832.7 and 832.8, to provide that, in such cases, an "opportunity for administrative appeal pursuant to [Government Code] Sections 3304 and 3304.5," is unnecessary to constitute a "sustained" finding. (Pen. Code, § 832.8, subd. (b).) KHSD further argues that affirmance of the trial court's judgement would yield an absurd result contrary to Legislative purpose of Senate Bill 1421. We disagree.

We accept KHSD's argument that an administrative appeal under Government Code sections 3304 and 3304.5 is not available to a peace officer unless the employing agency intends to impose discipline on the officer or deny the officer promotional opportunities "on grounds other than merit." (Gov. Code, § 3304, subd. (d).) Moreover, case law has held that this administrative appeal procedure is not available to a peace officer who has voluntarily resigned from his employment.[19] (*Haight*, *supra*, 228 Cal.App.3d at pp. 417–418.) However, neither proposition resolves the question of whether the subject records were subject to disclosure under the 2018 amendments to Penal Code section 832.7.

After KHSD filed its opening brief, it notified this court of two new cases that had been decided in 2021 relating to Penal Code sections 832.7 and 832.8 – *Collondrez v. City of Rio Vista* (2021) 61 Cal.App.5th 1039 (*Collondrez*) and *Ventura County Deputy Sheriffs' Assn. v. County of Ventura* (2021) 61 Cal.App.5th 585 (*Ventura*). We discuss *Collondrez* below.[20]

In *Collondrez*, a police officer with the City of Rio Vista (City) came under an IA investigation which resulted in findings of misconduct against the officer. (*Collondrez*, *supra*, 61 Cal.App.5th at pp. 1044–1045.) The officer was notified the City intended to

---

[19] See footnote 13, *ante*.

[20] We address *Ventura*, *supra*, 61 Cal.App.5th 585 in a subsequent section of this opinion.

discipline him as a result of the findings. (*Id*. at p. 1045.) The officer appealed and an administrative hearing pursuant to Government Code sections 3304 and 3304.5 was scheduled. (*Ibid*.) Soon thereafter, however, the officer and the City entered into a settlement agreement under which the "City agreed to pay [the officer] $35,000, and [the officer] agreed to resign …, release the City from any claims arising prior to the settlement, and not seek future employment with the City." (*Ibid*.) As a result, the administrative appeal was withdrawn. (*Id*. at p. 1054.)

As in this case, upon the passage of Senate Bill 1421, the City received various CPRA requests for records made newly disclosable by the 2018 amendments. (*Collondrez*, *supra*, 61 Cal.App.5th at p. 1045.) The City complied with the CPRA requests after giving the officer notice of some, but not all, of the requests in violation of the parties' settlement agreement. (*Ibid*.) The officer then sued the City for breach of contract and invasion of privacy, among other causes of action. (*Ibid*.)

The officer argued, among other things, that the findings at issue were not "sustained" as defined in Penal Code section 832.8, subdivision (b) because no final determination had been rendered in the administrative appeal. (*Collondrez*, *supra*, 61 Cal.App.5th at pp. 1051–1052.) The *Collondrez* court disagreed. It wrote: "[I]f the Legislature intended to so limit the new disclosure requirements to disciplinary cases that have been pursued through a full administrative appeal, it could easily have said so. Moreover, construing [Penal Code] section 832.8 to require a *completed* administrative appeal would render superfluous the Legislature's explicit requirement that the officer was provided an *opportunity* to appeal." (*Id*. at p. 1053.)

The facts of *Collondrez* are materially different from those in the case at bar. The officer in *Collondrez* initiated an appeal but withdrew it as part of a bargained-for settlement. The withdrawal of the appeal was a natural (and presumably necessary) consequence of the officer's bargain with the City. Here, Wyatt was never provided

notice of the "sustained" IA findings and never had an opportunity for an administrative appeal.

From the plain text of Penal Code sections 832.7 and 832.8, as amended by Senate Bill 1421, we conclude protection of peace officer privacy in their personnel files and related records remains an important purpose of the legislation. Thus, the statement in *Copley Press* that "the Legislature, …, made the policy decision 'that the desirability of confidentiality in police personnel matters *does* outweigh the public interest in openness' " still rings true with respect to matters not excepted from protection under Senate Bill 1421. (*Copley Press*, *supra*, 39 Cal.4th at p. 1298, fn. omitted.) We conclude the statement in *Copley Press*, that "competing policy considerations … may favor confidentiality, such as … protecting peace officers from publication of frivolous or unwarranted charges, and maintaining confidence in law enforcement agencies by avoiding premature disclosure of groundless claims of police misconduct" remains a valid concern under Senate Bill 1421. (*Ibid.*)

Thus, the statutes under consideration continue to protect peace officer privacy interests except for certain records including those that relate to "sustained" findings involving certain types of officer misconduct. It seems beyond dispute that the alleged "sustained" findings contained in the IA findings document do not fit precisely within the plain language of Senate Bill 1421 since Wyatt was never provided notice and an opportunity to challenge the findings by way of an administrative appeal.

From the plain text of Penal Code section 832.8, as amended by Senate Bill 1421, we discern a Legislative intent to afford a peace officer certain due process rights (i.e., an opportunity for an administrative appeal pursuant to Gov. Code, §§ 3304 and 3304.5) before certain sustained findings and related documents may be released pursuant to a CPRA request. However, due process rights may not be applicable to particular situations in which findings are made but no disciplinary action is contemplated. Such

circumstances raise questions about the implications of lack of notice and opportunity for administrative appeal that collaterally may impact an employee.

In our review of the legislative history for Senate Bill 1421, we have found nothing indicating the Legislature considered the situation where alleged "sustained" findings were made by a law enforcement employer following a peace officer's separation of employment through resignation, constructive termination, or otherwise. We cannot say the legislative purpose of Senate Bill 1421 is in any way violated by a construction that holds the subject records are not within the definition of "sustained" findings and related documents. Had the Legislature considered such a situation, it is plausible the Legislature might have provided that such records should be subject to disclosure in response to a CPRA request. It is equally plausible, however, the Legislature would have found policy considerations warrant continued protection of such documents to protect an officer's privacy interests due to the lack of notice and an opportunity to appeal the findings – as argued by Wyatt. The Legislature could also have determined that the requirement of an appeal process was necessary to "maintain[] confidence in law enforcement agencies by avoiding premature disclosure of groundless claims of police misconduct." (*Copley Press*, *supra*, 39 Cal.4th at p. 1298.) We cannot conclude that the judgment, if affirmed, yields an absurd result.

To the extent this case exposes circumstances not addressed by the Legislature in Senate Bill 1421, it is for the Legislature, not the courts, to make the relevant policy determinations necessary to achieve the appropriate balance between protecting a peace officer's privacy interest while at the same time providing public disclosure of allegations or sustained findings related to officer conduct and misconduct. (*Becerra*, *supra*, 44 Cal.App.5th at p. 917; *Copley Press*, *supra*, 39 Cal.4th at p. 1299.) In the next section, we discuss recent amendments to Penal Code section 832.7 which address the issue.

We conclude the subject records are not subject to disclosure under the 2018 amendments to Penal Code section 832.7 and 832.8

## IV. Senate Bill No. 16 (2021–2022 Reg. Sess.) § 3

In 2021, the Legislature made additional amendments to Penal Code section 832.7. (Assem. Bill No. 474 (2021–2022 Reg. Sess.) § 339; Sen. Bill No. 16 (2021–2022 Reg. Sess.) § 3; Sen. Bill No. 2 (2021–2022 Reg. Sess.) § 5.5.)  Subdivision (b)(3) of Penal Code section 832.7 now provides, in relevant part:  "Records that shall be released pursuant to this subdivision also include records relating to an incident specified in paragraph (1) in which the peace officer or custodial officer resigned before the law enforcement agency or oversight agency concluded its investigation into the alleged incident."  (Pen. Code, § 832.7, subd. (b)(3).)

Because we take no position on whether Wyatt resigned from the KHSD police department, was constructively terminated from said employment, or separated from his employment with KHSD under other circumstances, and because the CPRA requests at issue predate enactment of the 2021 amendments, we do not address whether a different result would obtain under current Penal Code section 832.7.  Moreover, we are unable to discern the Legislature's intent in enacting the 2018 amendments by reference to what the Legislature did in 2021.

Notwithstanding, given the change in the law, the judgment and writ issued by the trial court must be modified.  Specifically, the judgment and writ should be modified to limit the injunction to CPRA requests received prior to January 1, 2022, the effective date of the 2021 amendments.  Whether future CPRA requests, if any, may reach the subject records is an issue upon which we express no opinion.  The existing record is insufficient to reach a determination with respect to any such future CPRA requests.

## V. Mooted Issues

At issue in *Ventura* was whether the 2018 amendments to Penal Code sections 832.7 and 832.8 applied retroactively to permit the production of records that predate the amendments.  (*Ventura*, *supra*, 61 Cal.App.5th at pp. 589–590.)  In light of our decision that the subject records are not subject to disclosure under the 2018

30.

amendments, we need not consider whether Senate Bill 1421 applies to documents predating the enactment.

## DISPOSITION

The trial court's order and subsequent judgment granting Wyatt injunctive relief is affirmed, in part, and reversed, in part. We remand this matter to the trial court for further proceedings consistent with this opinion. Specifically, the peremptory writ should be recalled, and both the writ and the judgment should be modified to limit the injunction such that it prohibits disclosure of the subject records only in response to those CPRA requests received by KHSD prior to January 1, 2022. To the extent KHSD may receive future CPRA requests on or after January 1, 2022, seeking disclosure of the subject records, neither this opinion nor the judgment or writ issued in the trial court will take a position on whether the subject records should or should not be disclosed.

In the interests of justice, the parties shall bear their own costs on appeal.


POOCHIGIAN, J.

WE CONCUR:


HILL, P. J.


FRANSON, J.

31.